# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>JESUS L. GARCIA,<br><br>        Defendant. | 8:15CR230<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Findings and Recommendation (Filing No. 38), issued by United States Magistrate Judge F.A. Gossett recommending that the Motion to Suppress filed by the Defendant Jesus L. Garcia ("Defendant") (Filing No. 28), be denied. Defendant filed Objections to the Findings and Recommendation (Filing No. 41) and a supporting brief (Filing No. 42) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government responded (Filing No. 47) to the Objections. For the reasons set forth below, the Findings and Recommendation will be adopted in part and modified in part, and the Motion to Suppress will be granted in part and denied in part.

## BACKGROUND

The Magistrate Judge stated his factual findings and conclusions of law on the record, as contained in the Transcript of the evidentiary hearing held on November 24, 2015 (abbreviated in this Memorandum and Order as "Tr.") (Filing No. 37). Neither party directly objects to the Magistrate Judge's factual findings. The Court provides the following summary of the facts based on its review of the evidence:

On June 4, 2015, Defendant was traveling by Amtrak train on a ticket showing a route of California to Chicago to Washington, D.C. (Tr. 13.) When the train stopped in Omaha, several officers boarded the train to conduct interdiction activities. According to Investigator Mark Plowman ("Investigator Plowman"), the officers were specifically looking for a "male party" traveling to Chicago who might be transporting illegal items. (Tr. 8.)

Investigator Plowman began the interdiction by walking through the upper level of the train with several other officers. (Tr. 9-10.) After briefly talking with two men in one car, Investigator Plowman walked behind Investigator Sattlefield into a second car. (Ex. 1 Video 4:38.) Partway down the aisle, Investigator Plowman spotted Defendant. (Ex. 1 Video 5:00.) Investigator Plowman testified at the evidentiary hearing that he decided to engage Defendant in a conversation because of the new-looking bag in the overhead bin above Defendant's seat. (Tr. 11, Ex. 1 Video 14:40.) In Investigator Plowman's experience, newer bags are often used in drug trafficking because they have "no identifying marks." (Tr. 11; Ex. 1 Video 14:40.)

Investigator Plowman positioned himself between Defendant's seat and the aisle while Investigator Sattlefield stood no more than a seat or two away. (Tr. 15, 31, Ex. 1 Video 5:00-7:45.) Investigator Plowman was wearing a t-shirt and blue jeans, but immediately displayed his badge and identified himself as a police officer. (Tr. 12; Ex. 1 Video 5:00.) He told Defendant there were "no problems" and that he was not under arrest, and then asked, "Do you have a moment to talk to me?" (Ex. 1 Video 5:10.) Defendant agreed and Investigator Plowman asked to see Defendant's ticket and began inquiring about Defendant's itinerary. (Ex. 1 Video 5:08 - 5:55.) Defendant answered

2

Investigator Plowman's questions, explaining that he was on his way to Chicago to see a cousin before finally heading to Washington D.C. (Ex. 1 Video 5:08-5:55.) Investigator Plowman explained that he was on the train looking for people transporting "illegal things," and asked Defendant if there was anything illegal in his bag. (Ex. 1 Video 5:55-6:09.) Defendant said no. (Ex. 1 Video 6:09.) Investigator Plowman asked specifically whether Defendant was carrying drugs, cocaine, methamphetamine, or heroin. (Ex. 1 Video 6:09-6:12) Defendant again answered that he was not carrying any of those substances. (Ex. 1 Video 6:12.)

Investigator Plowman asked, "Is it okay if we do a quick search [of the bag]?" the Investigator asked. (Ex. 1 Video 6:15.) When Defendant asked "why," Investigator Plowman quickly explained that "we got people transporting things." (Ex. 1 Video 6:20.) Investigator Plowman continued, "Would that be okay?" Defendant replied, "I don't know why." (Ex. 1 Video 6:29.) Investigator Plowman testified at the suppression hearing that he took Defendant's behavior and response at this point in the encounter as a denial of consent to search. (Tr. 21.)

Investigator Plowman then asked Defendant, "Would it be okay if you just open it up for me and make sure?" Defendant responded "Yeah." (Ex. 1 Video 6:29-35.) Defendant retrieved his bag, opened its, and moved clothes at Investigator Plowman's direction while Investigator Plowman pulled the side of the suitcase to shine a flashlight inside. (Ex. 1 Video 6:50-7:01.) Investigator Plowman then asked, "can I touch the bottom?" (Ex. 1 Video 7:01-7:15.) As Defendant responded "I don't know why," Investigator Plowman reached in and touched the bottom of the bag. (Ex. 1 Video 7:05, Tr. 16.) Investigator Plowman then asked if Defendant would move his clothes at one

3

end of the bag. (Ex. 1 Video 7:01-7:15.) Defendant complied, and Investigator Plowman inspected to the bottom of the bag with his flashlight. (Ex. 1 Video 7:25-7:30.) Investigator Plowman then gestured to the other end of the bag and asked, "Can we go that way please?" (Ex. 1 Video 7:25-7:30.) Defendant replied, "yep" and moved his clothes at another end of the bag. (Ex. 1 Video 7:30; Tr. 17.) Investigator Plowman spotted an item and the following exchange occurred:

> **Investigator Plowman:** What's that right there?
>
> **Defendant:** Huh?
>
> **Investigator Plowman:** Pull that shirt up for me will ya please?
>
> **Defendant:** [Pulls shirt back]
>
> **Investigator Plowman:** Where your hands are what's that yellow underneath... inside that blue shirt?
>
> **Defendant:** Oh this shirt's my, it's my dirty clothes.
>
> **Investigator Plowman:** Can I touch it? Please? Right here?
>
> [Investigator Plowman touches the item in Defendant's bag.]
>
> **Investigator Plowman:** Okay, tell you what, partner, put your hands behind your back. You move, I'll hurt you.
>
> [Investigator Plowman, with Investigator Sattlefield's help, places Defendant in handcuffs.]

(Ex. 1 Video 7:30 - 7:55.)

Investigator Plowman testified that he arrested Defendant because, when he pushed down on the package in Defendant's bag, he could feel plastic and what felt to him like methamphetamine. (Tr. 18.) Investigator Plowman did not give Defendant his *Miranda* warnings at this time. After placing Defendant in handcuffs, Investigator Plowman asked Defendant how much was in the bundle and whether it was marijuana.

4

(Ex. 1 Video 8:04-8:15.) Defendant said he did not know how much was in the package or what the substance was. (Ex. 1 Video 8:14-8:18.) Investigator Plowman escorted Defendant off the train. (Ex. 1 Video 9:30-10:00.)

Once outside the train, Investigator Plowman read Defendant his rights. (Ex. 1 Video 10:30 - 11:25.) Defendant said he would not be answering any questions, and Investigator Plowman said that would be fine. (Ex. 1 Video 11:30-11:40.) Defendant was taken to the back room of the Amtrak station, where Investigator Plowman confirmed Defendant's decision not to talk without a lawyer present. (Tr. 19, Ex. 1 Video 12:30 - 12:40.)

The Magistrate Judge concluded that the encounter between Defendant and Investigator Plowman was consensual from the outset and that Defendant impliedly consented to the search of his bag. Specifically, the Magistrate Judge noted that although the Defendant questioned why Investigator Plowman wanted to search the bag, the Defendant never refused the search. Further, the Magistrate Judge concluded that Defendant manifested consent by retrieving the bag, opening it, and shifting clothing in the bag at Investigator Plowman's request. The Magistrate Judge also concluded that after Defendant invoked his right to counsel, Investigator Plowman's actions were intended to elicit an incriminating response. Accordingly, the Magistrate Judge recommends that all statements made after Defendant was given his *Miranda* warnings be suppressed.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendants have

objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

### I. Initial Encounter with Law Enforcement

The Defendant first argues that law enforcement seized and searched him, and that the search and seizure was unsupported by reasonable suspicion. The Fourth Amendment demands that people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause. . . ." U.S. Const., amend. IV. "The Fourth Amendment 'is not triggered by a consensual encounter between an officer and a private citizen.'" *United States v. Aquino*, 674 F.3d 918, 923 (8th Cir. 2012) (quoting *United States v. Villa–Gonzalez,* 623 F.3d 526, 531 (8th Cir. 2010)). An encounter is consensual unless, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Grant*, 696 F.3d 780, 784 (8th Cir. 2012). Courts evaluate several factors when assessing consent under the totality of the circumstances:

> Officers positioning themselves in a way to limit the person's freedom of movement, the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is necessary, the officer's retention of the person's property, or an officer's indication the person is the focus of a particular investigation.

*Aquino*, 674 F.3d at 923 (quoting *United States v. Griffith,* 533 F.3d 979, 983 (8th Cir. 2008)). "[T]he determination of whether a reasonable officer would believe that [a defendant] consented is a question of fact, subject to review for clear error." *United*

6

*States v. Quintero-Felix*, 714 F.3d 563, 568 (8th Cir. 2013) (quoting *United States v. Guerrero,* 374 F.3d 584, 588 (8th Cir. 2004)).

Defendant argues that although Investigator Plowman's initial questioning was consensual, it ripened into an illegal seizure. Defendant argues that at the time Investigator Plowman reached into Defendant's bag, all of the consent factors suggested Defendant had been seized under the Fourth Amendment. However, the Court's review of the video demonstrates that Defendant consented to the encounter. Investigator Plowman was cordial and did not use any language or intonation indicating that Defendant was required to comply with his request to answer questions. Further, although there were multiple officers present, there is no indication that they positioned themselves in a way that limited Defendant's movement nor did they physically touch the Defendant or retain his ticket, identification, or any other property. Investigator Plowman testified that at the onset of the encounter, Investigator Sattlefield was talking to other passengers down the aisle. Further, Investigator Plowman repeatedly indicated to Defendant that he was not the focus of a particular investigation and the video indicates that law enforcement questioned other passengers in addition to Defendant. Considering the circumstances in light of the factors listed in *Aquino*, the Court concludes that the encounter was consensual.

Defendant argues that even if the encounter was consensual, the search of Defendant's bag was not. The Magistrate Judge concluded that although Defendant did not verbally consent to the search, his consent was implied when he complied with Investigator Plowman's requests without objection. The government is required to show voluntary consent by a preponderance of the evidence. *United States v. Lakoskey*, 462

F.3d 965, 973 (8th Cir. 2006), *as amended on reh'g* (Oct. 31, 2006). Voluntary consent may be express or implied through "words, gestures, and other conduct." *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001); *see also Lakoskey*, 462 F.3d at 973. In the non-verbal context, implied consent can be shown through an affirmative act by a defendant to indicate consent. *See, e.g., United States v. Mendoza*, 677 F.3d 822, 829 (8th Cir. 2012) (holding that defendant who had been informed of right to refuse impliedly consented to search when, after officers said they were going to search his house, he gestured to the house and did not object); *United States v. Mendoza-Cepeda*, 250 F.3d 626, 627 (8th Cir. 2001) (holding that subject expressed consent to touch midsection by raising arms in response to request); *United States v. Barahona*, 990 F.2d 412, 417-18 (8th Cir. 1993) (holding that defendant consented to search of a car when he unlocked the car doors and waved toward the car in "inviting manner"). Consent may be implied where a defendant's body language and actions would have caused a reasonable person to believe that the defendant consented. *See Jones*, 254 F.3d at 695 (holding that consent is determined under reasonable person standard even if officer subjectively believed that consent was not given).

In this case, Investigator Plowman did not receive Defendant's verbal consent to conduct a search. When Investigator Plowman asked if he could search Defendant's bag, Defendant responded "Why? I don't know why?" (Ex. 1 Video 6:20-6:30.) Investigator Plowman testified that he understood Defendant's words and body language to mean that he did not consent to Investigator Plowman searching the bag. (Tr. 21.) Investigator Plowman then requested that Defendant open the bag himself. (Ex. 1 Video 6:30.) Defendant then retrieved the bag and opened it. When Investigator

8

Plowman asked if "we could move some clothes around" Defendant again responded "I don't know why." (Ex. 1 Video 6:55-7:03.) Investigator Plowman then asked Defendant to move the clothes himself. (Ex. 1 Video 7:00.) Defendant moved clothes and Investigator Plowman asked if he could touch the bottom. (Ex. 1 Video 7:05.) As Defendant was again asking why, Investigator Plowman placed his hand in the bag to touch the bottom of the bag. (Ex. 1 Video 7:05-7:10.) Investigator Plowman then asked Defendant to move clothes on both sides of the suitcase. Defendant complied, and Investigator Plowman observed what he believed to be a package containing illegal drugs. Investigator Plowman immediately placed Defendant under arrest.

It is acknowledged that Defendant did not give any verbal consent to search, and Investigator Plowman interpreted Defendant's initial actions as a refusal of consent. It is also acknowledged that Investigator Plowman placed his hand in Defendant's bag without awaiting a response to a request for permission to do so. It is also true that Investigator Plowman acted with respect when Defendant hesitated to grant permission to search the bag, and instead suggested that Defendant open the bag himself. Defendant retrieved the bag voluntarily and opened it for inspection without being ordered to do so. Although Defendant continued to question why the search was necessary, he complied with Investigator Plowman's requests, and gave verbal consent when Investigator Plowman asked to see the area of the bag where the suspect packages were eventually found.

On balance, the Court concludes that Defendant's behavior leading up to and during the search was consistent with consent. Defendant retrieved the bag and opened it in response to Investigator Plowman's suggestion that Defendant open the

9

bag himself. Significantly, the Court's review of the video evidence reveals no suggestion of force, coercion, or deception by law enforcement up to the time Investigator Plowman discovered the suspect package. *See United States v. Mendoza*, 677 F.3d 822, 829 (8th Cir. 2012) (lack of any use of force, coercion, intimidation, or deception indicative of consent). Although Defendant questioned the necessity of the search, his demeanor was consistently compliant and friendly rather than hostile. *See United States v. Gleason*, 25 F.3d 605, 607 (8th Cir. 1994) (holding that lack of hostility by defendant suggested consent).

Defendant suggests that Investigator Plowman exceeded the scope of any consent by sticking his hand in the bag at the same time he was asking to touch the bag. "The boundaries of a consensual search are confined to the scope of the consent, which is measured by a standard of objective reasonableness." *United States v. Shafer*, 608 F.3d 1056, 1064 (8th Cir. 2010). To define the scope of consent, courts consider what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect." *United States v. Siwek*, 453 F.3d 1079, 1085 (8th Cir. 2006) (citation omitted). Nothing from the evidence indicates that a reasonable person would have understood Defendant's actions in retrieving and opening the bag to limit the scope of the voluntary search to merely observing the items in the bag. Further, even if Defendant gave only limited consent, his voluntary compliance with Investigator Plowman's continuing requests made the search objectively reasonable. *See Gleason*, 25 F.3d at 607 (holding that even if the defendant gave only limited consent, "his failure to object to the continuing search made the trooper's search of any place a gun could be hidden, including under the passenger seat of the truck,

objectively reasonable."). The Court concludes that the government has shown, by a preponderance of the evidence, that Defendant, through his conduct, impliedly consented to a search of his bag.[1]

## II. Custodial Interrogation

The Magistrate Judge recommends that the Motion to Suppress be granted as to any statements Defendant gave after Investigator Plowman read Defendant his *Miranda* rights. The Court agrees with the Magistrate Judge's reasoning with respect to statements after the *Miranda* warnings were given, but concludes that Investigator Plowman interrogated the Defendant, while in custody, prior to the time the *Miranda* rights were given. The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977).

Immediately after Investigator Plowman saw the suspicious package in Defendant's bag, he placed Defendant in handcuffs. Investigator Plowman did not give Defendant his *Miranda* warnings at this time but asked Defendant how much was in the bundle and whether it was marijuana. (Ex. 1 Video 8:04-8:15.) Defendant said he did not know how much was in the package or what the substance was. (Ex. 1 Video 8:14-8:18.) Though it is unclear whether Defendant gave any incriminating statements in response to these inquiries, it cannot be disputed that Defendant was in custody at the time Investigator Plowman asked these questions. Accordingly, the Court adopts the

---

[1] Because the Court finds that the encounter and the search were both the product of voluntary consent, the Court need not address whether Investigator Plowman had reasonable suspicion to conduct a *Terry* stop.

11

Magistrate Judge's conclusion with the additional clarification that all statements made after Defendant was placed in handcuffs on the train will be suppressed.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted in part and rejected in part, and the Motion to Suppress will be granted in part and denied in part.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 38) are adopted in part;

2. The Motion to Suppress filed by the Defendant Jesus L. Garcia (Filing No. 28) is granted in part as follows:

   > All statements made by Defendant after he was placed in handcuffs on June 4, 2015, are suppressed.

   The Motion to Suppress is otherwise denied;

3. The Defendant's Objection to the Findings and Recommendation (Filing No. 41) is sustained in part and overruled in part; and

4. The government's Response (Filing No. 47) is noted for the record and may be terminated as a pending matter in this case.

Dated this 19th day of May, 2016

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge